OPINION
Plaintiff-appellant, the state of Ohio, appeals the Clinton County Court of Common Pleas decision granting defendant-appellee, James Kevin Jackson's, motion to suppress evidence.
On December 19, 1998, at approximately 2:30 a.m., Officer Fithen of the city of Wilmington Police Department observed a silver Ford minivan displaying license plates which had been reported as stolen in the Ohio State Highway Patrol's law enforcement data system ("LEADS"). Fithen observed the minivan parked in the parking lot of a bowling alley connected to a local bar. Officer Dungan, Fithen's supervisor, instructed Fithen to keep the minivan under observation until the driver came out of the bowling alley or bar. Since Fithen's shift ended at 3:00 a.m. and the driver had not yet returned to the minivan, Dungan instructed Fithen to recover the stolen plates by removing them from the minivan.
Several hours later, at approximately 6:30 a.m., Dungan observed the minivan driving toward him being operated by appellee, bearing no license plates. Dungan activated his overhead lights, and appellee stopped in a parking lot. Prior to the stop, Dungan observed no erratic driving by appellee. After the minivan came to a stop, appellee immediately exited the vehicle and began approaching Dungan's cruiser. Dungan testified that appellee "appeared unsteady on his feet," and Dungan placed appellee in handcuffs to further investigate.
Dungan testified that, after he put appellee in the handcuffs, appellee became argumentative. Dungan noticed a strong odor of intoxicants on appellee's breath, that his eyes were red and watery, and that his speech was slurred. Dungan then placed appellee in the back seat of his cruiser and advised appellee of his Miranda rights. Appellee stated that he was "not doing anything" without his lawyer. Dungan ceased questioning and informed appellee that he was under arrest.
Appellee was taken back to the police station where he was informed that he was being charged with driving under the influence of alcohol ("DUI"). On December 30, 1998, a grand jury indicted appellee for DUI in violation of R.C. 4511.19(A)(1), a fourth degree felony.[1] On March 4, 1999, appellee filed a motion to suppress "any and all information flowing from the illegal stop, detention, and/or arrest." On March 15, 1999, the trial court granted appellee's motion to suppress. The state appealed pursuant to Crim.R. 12(J), raising two assignments of error for our review.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT-APPELLEE'S MOTION TO SUPPRESS WHERE REASONABLE SUSPICION OF CRIMINAL ACTIVITY EXISTED TO WARRANT A TERRY STOP. (Emphasis sic.)
In this assignment of error, the state argues that granting appellee's motion to suppress was improper because Dungan had articulable, reasonable suspicion to justify the stop of appellee's vehicle.
"When reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies upon the trial court's ability to assess the credibility of witnesses, and independently determines `without deference to the trial court, whether the trial court has applied the appropriate legal standard.'" State v. Baker (1997),118 Ohio App.3d 654, 658, quoting State v. Anderson
(1995), 100 Ohio App.3d 688, 691. Where the facts are not in dispute, a determination as to whether such facts amount to a reasonable, articulable suspicion to conduct an investigatory stop is a question of law. State v. Handley (Feb. 1, 1999), Clermont App. No. CA98-04-028, unreported, at 5. Therefore, we review de novo whether or not the trial court applied the appropriate legal standard to the facts of this case. State v. DeCamp (Apr. 12, 1999), Warren App. No. CA98-05-060, unreported, at 6, citing Anderson at 691.
The Ohio Supreme Court has clearly held that "where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid." Dayton v.Erickson (1996), 76 Ohio St.3d 3, 11-12. In addition, this court has stated that "absent a traffic violation, a police officer is nevertheless justified in stopping a defendant if the officer has a reasonable and articulable suspicion that the defendant is engaged in criminal activity." State v. Evans (Mar. 15, 1999), Butler App. No. CA98-08-161, unreported, at 4-5. Further, where there is reasonable, articulable suspicion that a motorist is unlicensed, or that the vehicle is not registered, stopping an automobile for further investigation is not unreasonable. SeeDelaware v. Prouse (1979), 440 U.S. 648, 663, 99 S.Ct. 1391,1401.
We find that Dungan had a reasonable, articulable suspicion that the minivan was unlicensed or unregistered since the vehicle was observed by Fithen displaying stolen plates just a few hours prior to the stop. Also, at this time, the van did not have any license plates. Therefore, the stop of appellee's minivan was lawful, and the state's first assignment of error is sustained.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE'S MOTION TO SUPPRESS WHERE PROBABLE CAUSE EXISTED THAT APPELLEE WAS DRIVING UNDER THE INFLUENCE.
In this assignment of error, the state argues that granting appellee's motion to suppress was improper because, after the lawful stop, Dungan had probable cause to arrest appellee.
Probable cause for an arrest exists where, at the moment of the arrest, the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information were sufficient to warrant a prudent man to believe that the accused had committed the offense. Beck v. Ohio (1964),379 U.S. 89, 91, 85 S.Ct. 223, 225; State v. Timson (1974),38 Ohio St.2d 122. We find, from the facts in this case, that the arrest occurred when Dungan placed the handcuffs on appellee. It was at that point when there was (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, (4) which is so understood by the person arrested. State v. Darrah (1980),64 Ohio St.2d 22, 26. Therefore, we must look at the facts known to Dungan at the moment he put the handcuffs on appellee to determine probable cause.
"A police officer may arrest without a warrant where he has reasonable cause to believe a felony has been committed, and this reasonable cause to believe can be based upon his own observation, as well as upon information derived from reasonably trustworthy sources." Columbus v. Lenear (1984), 16 Ohio App.3d 466, 468. Similarly, "[i]nformation supplied by officers or agencies engaged in a common investigation with an arresting officer may be used to establish probable cause for a warrantless arrest." State v.Henderson (1990), 51 Ohio St.3d 54, syllabus.
R.C. 2913.71 defines the felony crime of theft of license plates and states as follows:
 Regardless of the value of the property involved and regardless of whether the offender previously has been convicted of a theft offense, a violation of section 2913.02[2] or 2913.51[3] of the Revised Code is a felony of the fifth degree if the property involved is any of the following:
* * *
(C) A motor vehicle identification license plate * * *.
The record reveals that, prior to the arrest, Dungan had not observed sufficient indicia of intoxication to support an arrest for DUI. However, the record indicates that Dungan initially arrested appellee for felony theft, not for DUI. In this regard, the following dialogue took place at the suppression hearing:
 MRS. QUIGLEY [Counsel for the state]: Alright [sic]. Upon making the recovery of the stolen tags at that time, what happened next?
 OFFICER DUNGAN: Okay. The — I notified the other members of the shift that the tags had been removed from the vehicle and to keep an eye out for it, be on the lookout. I was on patrol on Rombach Avenue and I saw what appeared to me to be the same vehicle westbound on Rombach.
* * *
 QUIGLEY: Alright [sic]. This was approximately how far from the bar?
DUNGAN: Between a quarter and a half mile.
* * *
 QUIGLEY: Alright [sic]. And at that time did you make any observations of the vehicle with regards to the license plate or the lack thereof?
* * *
 DUNGAN: I observed the vehicle being operated without a visible license plate.
QUIGLEY: Alright [sic]. Then what did you do?
 DUNGAN: Due to the nature of the incident that I felt I was dealing with, I notified backup officers that I was behind the vehicle and that I was going to initiate a stop as soon as I had someone close enough to back me up. I felt I was dealing with a felony at that point.
Later, while relating why he put the handcuffs on appellee, Dungan stated, "[D]ue to the fact that I had felt that I was dealing with a felony, the action of him removing himself from his vehicle and approaching mine, I felt at that point for my safety and his that the Defendant should be restrained until I could do a little further investigation." It seems clear that, at the moment of arrest, Dungan restrained appellee, not for DUI, but for the felony theft offense.
Dungan's own observations coupled with the information received from his fellow officer engaged in a common investigation established the following: (1) there was a silver Ford minivan displaying stolen license plates in the vicinity; (2) just a few hours earlier, Fithen had removed those plates from the minivan at Dungan's instruction; (3) Dungan observed a silver Ford minivan being operated by appellee within one half mile of Fithen's prior report; and (4) the minivan was being operated without visible license plates. We find that these facts, which were known to Dungan at the moment of the arrest, were sufficient to warrant a prudent man to believe that appellee had committed a felony, namely, theft of license plates or receiving stolen license plates in violation of R.C. 2913.71. Therefore, we find that appellee's arrest was lawful.
Probable cause for the DUI charge was developed after appellee's lawful arrest for theft. Contrary to appellee's assertion, it is not detrimental to the state's case that the state elected to charge appellee with DUI, a fourth degree felony, rather than the lesser charge of theft of license plates, a fifth degree felony.
It has been stated that "[a] person found by a law enforcement officer violating a law of this state * * * may be lawfully arrested by such officer without a warrant, regardless ofwhat charge, if any, is thereafter made against him." (Emphasis added.) State v. Hatfield (1965), 1 Ohio App.2d 346, paragraph one of the syllabus. Although Hatfield involved a misdemeanor offense, the analysis is nonetheless applicable to this case as well:
 If one is found by a police officer committing a misdemeanor, he may be lawfully arrested, charged with that or any other misdemeanor, or charged with no offense whatsoever, without the arrest being thereby rendered illegal. Many an offender has been lawfully apprehended for a minor traffic violation and found upon examination to be guilty of another offense or offenses, either felonies or misdemeanors, and either related or unrelated to the misdemeanor witnessed by the officer and justifying the original arrest. * * * If the initial arrest was lawful [the offender] has suffered no deprivation of his rights.
 Id. at 348.
Since appellee's initial arrest was lawful, his rights were not violated simply because, subsequent to his arrest, the state developed probable cause for a greater charge and elected to charge him with the greater offense. Accordingly, we find that appellee's arrest was lawful, and the state's second assignment of error is sustained.
Judgment reversed and remanded for further proceedings.
YOUNG, P.J., and WALSH, J., concur.
[1] The offense was elevated to a felony pursuant to R.C.4511.99(A)(4)(a) because appellee had three prior DUI convictions within the past six years.
[2] R.C. 2913.02 defines the crime of theft.
[3] R.C. 2913.51 defines the crime of receiving stolen property.